UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN YESZIN, et al,

    Plaintiffs,                                  CASE NO.: 2:11-cv-10466-LPZ-RSW

vs.                                                HON. LAWRENCE P. ZATKOFF

NEOLT, S.P.A., an Italian corporation,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on August 3, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [dkt 5]. The parties have fully briefed the Motion, including supplemental briefing resulting from the Court's prior order granting limited discovery [dkt 13]. The Court finds that the facts and legal arguments pertinent to Defendant's Motion are adequately presented in the parties' papers such that the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that Defendant's Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

## II. BACKGROUND

This case involves injuries sustained by Plaintiffs on March 27, 2010. Plaintiffs allege these injuries were caused by a drafting table ("the Table") manufactured and designed in Italy by Defendant Neolt S.P.A. ("Neolt"), an Italian corporation. The Table is of a particular model series designated "Elite." According to Plaintiffs, the injury occurred while Plaintiffs were attempting to move the drafting table from one location in Plaintiff Yeszin's home to another in March of 2010. Plaintiffs allege that the table had dangerous spring-loaded support arms that released unexpectedly during the move and struck both Plaintiffs in the face. Plaintiff Yeszin suffered a total loss of vision in one eye along with other facial injuries; Plaintiff Harrison suffered injuries to his face also requiring extensive medical treatment. According to Plaintiffs, Defendant negligently designed and manufactured the Table, and failed to adequately warn Plaintiffs of the danger in moving it.

In lieu of filing an answer to Plaintiffs' Complaint, Defendant filed a Motion to Dismiss [dkt 5] claiming the Court lacks personal jurisdiction over Defendant. In their Response to Defendant's Motion [dkt 7], Plaintiffs requested that the Court permit limited discovery to allow Plaintiffs to investigate the nature of Defendant's contacts with the state of Michigan. The Court granted Plaintiffs' discovery request [dkt 13], and both parties conducted relevant discovery and submitted supplemental briefs.

In their supplemental brief [dkt 33], Plaintiffs abandon prior assertions of general jurisdiction, and rely on a theory of specific jurisdiction. Under this theory, Plaintiffs contend that personal jurisdiction is established on the basis of Defendants' business relationship with Martin Universal Design ("Martin Universal"), a Michigan company, and its predecessor companies, Northwest Print & Supply Company ("Northwest") and Martin Instrument Company

("Martin").  Plaintiffs offer facts from the deposition of Dennis Kapp ("Kapp"), the current CEO and chairman of Martin Universal and formerly the CEO of both Northwest and Martin.  Both Northwest and Martin were incorporated in Michigan, headquartered in Michigan, and had warehouses in Metro Detroit.

Kapp's deposition reflects his belief that Martin was the exclusive United States distributor for Neolt products from the beginning of the relationship in the late 1970s until 1985, possibly even until 1988.  Kapp admits that the business relationship between Neolt and Martin reached a high point in 1982, but dropped off in subsequent years due to the advent of computer aided design and upon Kapp's discovery, in 1985, that Neolt was dealing with other U.S. companies, including Alvin & Company ("Alvin"), a Connecticut-based competitor of Martin. Additionally, Martin had a warehouse in California around the time period in question (five to seven years in the late 1970s and into the 1980s) that received direct container shipments of Neolt products.  Recently, between 2000 and 2011, Neolt sold eighty-nine drafting tables to Martin Universal.

During discovery, Plaintiffs found a previously unseen label which indicated a 1986 manufacture date for the Table.  Kapp states that a Neolt drafting table manufactured in 1986 and subsequently imported to the United States "likely" came through his warehouse in Detroit. Another label on the Table indicates that it was at some point the property of Comau Productivity Systems ("Comau") for an unknown period of time.  Comau is an Italian corporation that began expanding its presence into North America in 1984 and currently maintains a presence in Michigan.

It is undisputed that Neolt manufactured the Table in Italy.  The exact nature and scope of the business relationship between Neolt and Martin in the late 1970s and into the 1980s is

3

unclear. Based on Kapp's deposition, there was never a contractual agreement outlining the relationship. In their supplemental brief [dkt 36] Defendant asserts that none of the evidence offered by Plaintiffs points to the sale of Neolt drafting tables by Martin to end users in Michigan. Defendant further asserts that Neolt's more recent sales of drafting tables to Martin Universal are outside of the time period relevant to the issue of personal jurisdiction in this case.

### III. LEGAL STANDARD

#### A. PLAINTIFFS' BURDEN

It is well settled that the plaintiff bears the burden of showing that the Court has personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Once a defendant has filed a properly supported motion for dismissal based on a lack of personal jurisdiction, a plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). Here, Defendant filed a properly supported motion for dismissal, and both parties submitted documents in support of their respective positions.

At that point in a proceeding the court may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Id.* at 1458 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The Court has discretion in which method to employ, but notably "the method selected will affect the burden of proof the plaintiff must bear to avoid

4

dismissal." *Id*. (citations omitted).  When a deciding court permits limited discovery, the plaintiff must establish that jurisdiction exists by a preponderance of the evidence. *Serras*, 875 F.2d at 1214.  However, even upon granting discovery, where a court chooses not to conduct an evidentiary hearing, the plaintiff need only show personal jurisdiction at the minimal prima facie standard.  *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

**B. PERSONAL JURISDICTION**

The Court employs a two-step inquiry when determining whether it may properly exercise personal jurisdiction over Defendant: (1) whether sufficient minimum contacts exist to find jurisdiction under Michigan's long-arm statute, and if such contacts are found, (2) whether the exercise of jurisdiction over Defendant would offend due process. Fed. R. Civ. P. 4(e); *Theunissen*, 935 F.2d at 1459 (citation omitted).

### III. ANALYSIS

**A. PLAINTIFFS' BURDEN**

As an initial matter, the Court will briefly address Plaintiffs' burden in establishing jurisdiction.  Ordinarily, granting limited discovery on this issue has the effect of heightening Plaintiffs' burden to the aforementioned preponderance of the evidence standard.  The Court, however, chose not to hold an evidentiary hearing and Plaintiffs subsequently disputed the scope of discovery.  A prima facie standard thus remains proper in this case. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  As such, in deciding this motion the Court considers all evidence gathered though discovery in a light most favorable to Plaintiffs, independent of any controverting assertions presented by Defendant. *Id*.

**B. PERSONAL JURISDICTION**

Plaintiffs assert that the Court has personal jurisdiction over Defendant by virtue of specific jurisdiction, but explicitly and voluntarily abandoned any claim in support of general jurisdiction. In support of specific jurisdiction, Plaintiffs allege that Defendant chose Martin Universal, a Michigan corporation, as its exclusive national distributor prior to, and potentially during and after Defendant manufactured the Table. Plaintiffs also present evidence of documented sales of drafting tables by Defendant to Martin in Michigan during the period from 2000 to 2008, suggesting those sales constituted purposeful availment by Defendant of the privileges and protections of Michigan laws by virtue of conducting business there.

Defendant argues that no facts in the record evidence the sale of any drafting table by Defendant to a Michigan end user. Additionally, Defendant asserts there is nothing in the record to show that Defendant established minimum contacts directed at Michigan. For the reasons below, the Court finds that Defendant had sufficient contacts with the State of Michigan to establish personal jurisdiction.

**1.  Long-Arm Jurisdiction Under Mich. Comp. Laws § 600.715**

Pursuant to Fed. R. Civ. P. 4(e), the Court first looks to the Michigan long-arm statute to determine whether personal jurisdiction exists in the case at bar. That statute provides that:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> ***
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Mich. Comp. Laws § 600.715.

Defendant contests long-arm jurisdiction, arguing that its contacts with Michigan were not established within the time period purportedly required by *Witbeck v. Bill Cody's Ranch Inn* and its companion case *Hapner v. Solis Apparatus Manufactories, Ltd*. (collectively "Hapner"), 659 Mich. 680, (1987).  The Court finds this argument both unpersuasive and an incorrect interpretation of the cases cited.  In *Hapner*, the minimum contacts in question occurred fourteen years prior to the tortious accident.  The court in that case found that minimum contacts need only exist at any time prior to the injury giving rise to the cause of action for jurisdiction to be proper. *Id*.  The practical effect of applying Defendant's contention would absolve negligent actors from liability as long as they severed contacts with Michigan just prior to the occurrence of an injury.

By its own admission, Defendant manufactured the Table.  If Defendant was negligent in its manufacture of the Table, then Defendant caused consequences to occur in Michigan, resulting in an action for tort.  Drawing all inferences in favor of Plaintiffs, the Court finds that jurisdiction over Defendant is proper under Michigan's long-arm statute.  The Court next turns to the issue of whether jurisdiction offends Due Process.

**2.  Due Process**

The Court's inquiry does not end with Michigan's long-arm statute because "constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in due-process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.*  The relevant due-process criteria (the "*Mohasco* Requirements") are:

> First, the defendant must purposefully avail himself of the
> privilege of acting in the forum state or causing consequence in the

> forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 1460 (quoting *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1299 (6th Cir. 1989) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). If Plaintiffs can satisfy each of the three *Mohasco* Requirements, due process will not be offended.

### *1. Purposeful Availment*

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous or attenuated contacts." *Burger King,* 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984) and *World–Wide Volkswagen,* 444 U.S. 286, 299 (1980)). Essential to purposeful availment analysis is differentiating between what the Supreme Court in *World-Wide Volkswagen* calls a mere "collateral relation to the forum State," 444 U.S. at 299, and the kind of *substantial relationship* with the forum state that invokes, by design, "the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Court finds that Defendant did purposefully avail itself of the privilege of acting in Michigan through its substantial and documented manufacturer-distributor relationship with Martin. Defendant conducted business with a Michigan company and injected products into the Michigan forum. The relationship with Michigan was not random but specific; shipping goods to a forum is far from attenuated. Defendant's conduct was exactly the type that properly invoked the benefits and protections of Michigan laws.

First, while Defendant argues that the record contains no evidence that a contract or written agreement between Defendant and Martin ever existed, Kapp testified that such an

8

agreement did exist—despite the absence of a written contract—and the Court views such evidence in a light most favorable to Plaintiffs. Nevertheless, the presence or absence of a contract is not a controlling factor in this case. While contractual relationships may provide for the foundation of jurisdiction in some instances, here the shipped goods themselves represent sufficient actions taken by Defendant amounting to a legal submission to jurisdiction of the Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (A defendant's transmission of goods permits the exercise of jurisdiction where the defendant can be said to have targeted the forum).

In *J. McIntyre*, the Supreme Court plurality opinion held that a foreign defendant's anticipation that its goods will reach a forum state is insufficient to establish minimum contacts. 131 S. Ct. at 2784. The Supreme Court expressed the principle that in addition to anticipation of goods reaching a forum, there must also be some type of activity specifically directed towards the forum. *Id*. In this case, the shipment of goods from Italy to Michigan constitutes activity specifically directed towards the Michigan forum. While the exact nature of the business transactions between Neolt and Martin is indefinite, it is axiomatic that Defendant chose to ship products to Michigan, anticipated that its drafting tables would reach Michigan, and enjoyed the benefits and protections of Michigan laws. Along with those benefits, Defendant had (or at least should have had) a reasonable expectation of being haled into a Michigan court if an injury substantially related to those business transactions were to occur in Michigan.

As such, the first *Mohasco* requirement is satisfied and the Court's analysis continues with respect to the two remaining requirements.

*2. Cause of Action Relation to Contacts*

9

To satisfy the second *Mohasco* Requirement, Plaintiff's cause of action must arise from activities directed at Michigan that caused consequences to occur in Michigan. *Mohasco*, 401 F.3d at 381. An action arises from contacts directed at a forum state if those contacts are related to the operative facts of the controversy. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267 (6th Cir.1996). Notably, this factor "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a *substantial connection* with the defendant's in-state activities.' " *Third Nat'l. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989) (quoting *Mohasco,* 401 F.2d at 384 n. 27) (emphasis added).

In viewing the evidence presented by Plaintiffs in a light most favorable to Plaintiffs, the Court finds the requisite *substantial connection* between the allegedly tortious injuries caused by the Table and the purposefully availing activity of injecting products of the same type into Michigan. In fact, potential injuries sustained by Michigan consumers due to negligently manufactured products present exactly the type of risk that companies likely contemplate when selling and shipping products directly to Michigan.

It is true, and Plaintiffs even admit, that it is impossible to state with unequivocal certainty the exact origin and subsequent history of the Table. Notwithstanding this, the record demonstrates that prior to and around the time the Table was manufactured, Neolt directed activity—specifically similar products—at Michigan. Even if years later, if Michigan citizens are allegedly injured due to possible negligence in the Table's manufacture, the connection between the contacts and the operative facts of the controversy is undeniable.

Defendant argues that Plaintiffs cannot prove their theory as to the definitive origin and subsequent sale history of the Table, thereby invalidating jurisdiction. At this point, however, Plaintiffs are not required to prove anything beyond a prima facie standard. For purposes of establishing personal jurisdiction, it is sufficient that injuries occurred in Michigan, that such injuries were caused by a table manufactured by Defendant, and that Defendant exported products of the very same type to Michigan around the time the Table was manufactured. Had the alleged injury occurred in a State other than one to which Defendant exports products, the analysis may very well be different. Defendant may not be able to anticipate litigating in many of the States where its products ultimately end up, but should reasonably expect to litigate in a state in which Defendant shipped its product and maintained a manufacturer-distributor relationship.

The Court notes Defendant's argument that by 1985, a year prior to the Table's manufacture date, Defendant had at least one other distribution point in Connecticut. However, the Court is not persuaded by the argument that other distribution points serve to sever Defendant's availment of the Michigan forum. The evidence of further distribution forums does not alter the Court's analysis, but rather serves to potentially increase the list of forums in which Defendant may expect to be sued if future injuries resulting from its products occur in those forums.

Accordingly, in light of the minimal prima facie standard, Plaintiffs have provided sufficient evidence to show that Defendant's contacts with Michigan are substantially related to the operative facts of the controversy. Therefore, the second *Mohasco* requirement is satisfied.

*3. Substantial and Reasonable*

The third *Mohasco* Requirement mandates that the acts of Defendant and the consequences of those acts have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable. *Mohasco*, 401 F.3d at 381. In determining reasonableness, the Court must balance a variety of factors including, "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *See Theunissen*, 935 F.2d 1454, 1461.

Also helpful in the Court's analysis of this factor is that, in cases where the first two *Mohasco* requirements are met, an inference arises that the third factor is also satisfied. *See Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *CompuServe, Inc.,* 89 F.3d at 1268 (noting that "if we find, as we do, the first two elements of a prima facie case-purposeful availment and a cause of action arising from the defendant's contacts with the forum state-then an inference arises that this third factor is also present").

Here, the connection between Defendant and Michigan is based on the manufacturer-distributor relationship existing during the late 1970s and well into the 1980s. Coupled with the fact that the alleged injuries occurred in Michigan, the Court finds that Defendant has a "substantial enough connection" with the State of Michigan to make the exercise of jurisdiction reasonable.

Additionally, due to the severity of Plaintiffs' injuries, Plaintiffs have a high interest in obtaining relief in this case. While a foreign defendant would sustain a significant burden to litigate in Michigan, the Court finds this burden to be far lighter than what Plaintiffs would have to undergo if Italy was their only available forum to seek relief. Moreover, Michigan has a vested interest in efficiently adjudicating the claims of its citizens and providing a system for potential redress when its citizens sustain injuries from foreign products sent to Michigan for

sale. Because the Court may infer that that the third *Mohasco* prong is satisfied upon the first and second prongs being satisfied, and because reasonableness otherwise weighs in favor of jurisdiction over Defendant, the third and final prong of *Mohasco* is met. As such, the Court finds that it may exercise personal jurisdiction over Defendant in this case.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

IT IS SO ORDERED.

Date: August 3, 2012

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
U.S. DISTRICT JUDGE